Robinson *v.* Wynne.

Opinion delivered January 23, 1911.

1.   Appeal and error—presumption.—Where the testimony in the appellant's abstract shows that a sale of timber was witnessed by some kind of writing, the precise nature of which is not shown, it will be

presumed that the writing was sufficient to satisfy the statute of frauds. (Page 369.)

2. FRAUDS, STATUTE OF—PART PERFORMANCE.—Delivery of timber sold and payment of the price therefor takes the contract out of the statute of frauds. (Page 369.)

Appeal from Jackson Chancery Court; *George T. Humphries,* Chancellor; affirmed.

*J. N. Rachels* and *Sam T. Poe,* for appellant.

The sale of timber conveys an interest in the land on which it grows. 69 Ark. 447; 57 Ark. 340; 73 Ark. 331; 77 Ark. 119. And, to be valid under the statute of frauds, such sale must be evidenced by deed. 10 N. Y. 114; 1 Denio 550; 2 M. & W. 248; 74 Miss. 484; 21 So. 409; 61 Mo. App. 409; 50 O. St. 57; 33 N. E. 90; 27 Vt. 157; 49 N. H. 204; 43 Wis. 566; 2 Tenn. Ch. 232; 99 N. C. 495; 63 Ark. 10; Jones on Conveyancing, § § 1600, 1601.

*S. Brundidge, Jr.,* for appellee.

Appellants practically concede the only question in this case, *i. e.,* whether or not the evidence sustains the verdict of the trial court.

On the law question, the validity of the sale of the timber under the statute of frauds, appellant does not produce a copy of the deed or assignment, and Bell's testimony is too vague and uncertain to inform this court as to its contents. There is nothing to show whether the timber was to be cut immediately or not. If it was to be cut immediately, no deed was necessary to transfer title. 75 Ark. 336. Moreover, the possession of Bell, through Coates, would take the transaction out of the statute of frauds. 83 Ark. 415; 91 Ark. 474.

McCULLOCH, C. J. This is an action to foreclose a deed of trust conveying certain lands in Jackson County, Ark., in trust to secure the payment of a debt evidenced by a note for the sum of $1,200 executed by A. J. Bell to Geo. C. Griffith. E. R. Wynne, the trustee named in the deed, joins Griffith in the action, which is instituted against Bell and his wife and Chas. E. Robinson, the trustee of his estate in bankruptcy. Plaintiff claims an indebtedness of $850, being the alleged unpaid balance due on the note after crediting it with the sum of $350.

The trustee, Robinson, filed answer admitting that the sum of $400 is due on the mortgage and no more. And he also filed a cross complaint against Griffith claiming an indebtedness of the latter to Bell for the purchase price of a lot of piling amounting to more than the balance due on said mortgage debt, and he prayed for a decree against Griffith for the balance. The court on final hearing found in favor of plaintiff in the full amount claimed, and rendered a personal decree against Bell, and also decreed foreclosure of the trust deed.

There is a sharp conflict in the testimony. This much, however, is undisputed: Bell executed the note and trust deed to Griffith to cover a loan of $1,200 to be made to Bell to enable him to purchase a certain tract of land. Griffith was to get the money for Bell, but failed, and let him have only $400 at the time of the purchase of the land, promising to let him have the balance later.

Griffith testified that, in addition to the $400 paid to Bell in cash, he transferred to the latter a tract of standing timber, for which the latter agreed to pay him $450 by having it charged on the mortgage debt. He testified that one Coates first applied to him for the purchase of this timber, but that he declined to sell it to Coates, and told him that if Bell wanted to buy the timber he would sell it to him and credit the price, $450, on the amount which he was to advance to Bell on the loan secured by the mortgage; that afterwards he found Coates cutting the timber and took steps to prevent it, but that Bell called him up over the telephone and expressly agreed to pay for the timber, and that thereupon he sent him the papers transferring the timber. He also testified that subsequently he offered to send Bell a check for $350 to make up the amount of the $1,200 loan, but that the latter instructed him to credit it on the loan, which he did, thus reducing it to the amount claimed in the action.

Bell denied in his testimony that he agreed to pay $450 for the timber, but testified that he sold and delivered to Griffith a lot of piling for which he had not been paid, amounting to the price of $647.91. Griffith denied owing anything for piling except possibly four or five sticks, which had been branded by his agent but which had not been delivered. He testified that

he furnished Bell a statement which was correct, and paid him $581.66, the amount of balance due on account. There was some corroboration of the testimony of each party, but we are of the opinion that the finding of the chancellor is not against the preponderance of the testimony.

Defendants insist that the sale of the timber and Bell's alleged agreement to pay the price is within the statute of frauds. The testimony is to the effect that Griffith transferred and delivered to Bell some kind of a writing concerning the sale of the timber, the precise nature of which is not shown in the abstract. We must assume, in the absence of a showing in the abstract, that the writing was sufficient to satisfy the statute of frauds, But, if that be not so, the statute is satisfied by the delivery of the timber to Coates and the agreement of Bell to pay the price, which was charged on the mortgage debt. Coates was, according to the testimony, in possession of the timber, cutting it, and Griffith, on the faith of Bell's promise to pay, dismissed an action which he had instituted to stop Coates from cutting until the price should be paid.

Finding no error, the judgment is affirmed.