Henneberger *v.* Duncan.

4-6678                                   161 S. W. 2d 380

Opinion delivered April 6, 1942.

*Pickens & Pickens,* for appellant.

*Ben B. Williamson* and *Hugh U. Williamson,* for appellee.

MEHAFFY, J.   The appellant, on May 8, 1940, filed in the chancery court of Jackson county her complaint in which she claimed title to the following property: northeast quarter west of White River, section 9, township 11 north, range 3 west, containing 91.70 acres, more or less, and lots 8, 9 and 10 of block "G" of Chastain's Addition to the city of Newport and lots 7 and 9 of block "H" in Chastain's Addition to the city of Newport.

She alleged that said lands had forfeited for the nonpayment of taxes for the year 1934, but that said sale was void because the quorum court of Jackson county levied a tax of one-tenth of a mill for crippled children's commission, one-tenth of a mill for crippled children's home and five-tenths of a mill for the extension service of Jackson county, in addition to the levy of five mills for county general purposes, thereby exceeding the constitutional limit imposed on the county by the constitution of the state of Arkansas.   The appellant further alleged that the appellee, W. M. Duncan, had obtained two deeds, dated April 19, 1940, from the State Land Commissioner of the state of Arkansas, and that said deeds constituted a cloud upon her title, and asked that they be canceled.

The appellee filed answer June 3, 1940, in which he admitted that the lands and lots described were sold for the nonpayment of taxes for the year 1934, but denied that said sale as made by the collector of Jackson county was illegal and void.   He admitted that he purchased the land from the State Land Commissioner on the 19th day of April, 1938, and attached copies of his deeds.   He further alleged that since he purchased said property it has been assessed on the tax books in his name, and that he had paid the taxes.   He pleaded the statute of limitations as a bar to appellant's cause of action.   He denied every material allegation of appellant's complaint.

Appellant then filed an affidavit of tender and certified check.

On April 10, 1941, appellee filed an amendment to his answer as follows: "Defendant, for further answer to the complaint of the plaintiff, states that just prior to the time of purchasing the lands and lots from the State Land Commissioner the plaintiff and her husband, not being able to redeem said lands and being indebted to the defendant in the sum of $445.62 for groceries and supplies, sold to and delivered to the plaintiffs by defendant, agreed that if the defendant would purchase said lands in his own name from the State Land Commissioner then they would in turn execute to him a quitclaim deed for their interest in said lands and lots in full satisfaction of their indebtedness to defendant as above mentioned.

"Pursuant to said agreement, J. W. Henneberger, the husband of plaintiff, Julia J. Henneberger, went with the defendant to the state land office, Little Rock, Arkansas, on the 19th day of April, 1938, for the purpose of defendant's purchasing the said lands and lots, at which time defendant did purchase the said lands and lots.

"That defendant prepared a quitclaim deed to be executed to him by the said J. W. Henneberger and Julia J. Henneberger and that they agreed to come to his store and execute the same and acknowledge the same before Garfield Rutledge, justice of the peace; that they promised to come on two or three different occasions, but failed to do so and never gave the defendant any reason for such failure until this suit was brought by the plaintiff to cancel defendant's deeds."

Said cause of action was submitted to the court on July 10, 1941, after the following stipulation had been introduced: "It is hereby stipulated and agreed by and between the plaintiff and defendant and by their respective attorneys that the following facts are hereby agreed:

"That Julia Henneberger was the owner of the lands in question prior to its forfeiture to the state of Arkansas in the year 1935 for the taxes of 1934; that said lands

were assessed for the year 1934, and that the real estate tax book of Jackson county, Arkansas, so reflect that assessment and further reflect that it was assessed in the name of Julia Henneberger and that the following taxes were levied against said lands for the year 1934:

"State ............................................................ 8.7 mills
County ....................................................... 5 "
Bond ........................................................... 2 "
School Districts .......................................different amounts for
                                            different districts
Road ........................................................... 3 mills
Cities ......................................................... 5 "
Crippled Children's Comm.................. 1-10 "
Crippled Children's Home.................... 1-10 "
Extension service .................................. 5-10 "

"That said above listed millages were extended on the tax books and that said lands were sold to the state of Arkansas for said above listed millage of taxes.

"It is further agreed that the title to said lands was confirmed in the state of Arkansas on May 24, 1938.

"It is further agreed that a copy of the deed from the state of Arkansas to W. M. Duncan may be attached to this transcript."

The appellee then introduced the following testimony: "J. W. Henneberger testified as follows: I live in Newport and am the husband of the appellant, Julia J. Henneberger, and know W. M. Duncan, the appellee, and that the land involved belonged to Julia J. Henneberger, my wife. I conveyed part of it to her several years ago. There were no judgments against me when I conveyed same. I was not with appellee the day he bought this land from the state, was not with him on April 19, 1938."

W. M. Duncan, appellee, testified: "I am the defendant in this suit and live in Newport and am in the grocery business and have been for ten years. I know Julia J. Henneberger and J. W. Henneberger. They had been trading at my store prior to April 19, 1938, and owed me at that time $445.62. I bought the lands in question from the state of Arkansas. J. W. Henneberger owed

me and claimed he couldn't pay me. He said he was about to lose some of the land on account of judgments against him, and that he rather let me have it than anyone else and that we could go to Little Rock and buy it in and that if he couldn't settle within thirty days what he owed me he would quitclaim it to me, and furthermore that his wife would be up and give me a warranty deed to the land. . . . He acted as her agent. We went to Little Rock in his car and he was with me. I prepared a quitclaim deed for them to sign, dated April, 1938, which I attached as exhibit 'A' to my testimony. I satisfied his account and have paid the taxes on the lands ever since, have made demand on Mr. and Mrs. Henneberger to execute deed and they have not done so.''

It is stipulated that the taxes paid by the appellee were as follows: Receipt No. 4428, $54.60; receipt No. 2323, $14.94; receipt No. 4153, $65.99; receipt No. 826, $120.51; receipt No. 310, $129.84.

This was all the evidence introduced in the case, and the court took same under advisement. On August 5, 1941, the court handed down a decree in which it held that the plaintiff, Julia J. Henneberger, prior to November, 1935, was the owner of the above described land; that she failed to pay taxes assessed and due on said lots for the year 1934 and that thereafter the lots were sold to the state of Arkansas for said taxes in November, 1937, and were duly certified to the state of Arkansas by the clerk of Jackson county; that on May 24, 1938, the title to said lands and lots was confirmed in the state of Arkansas by the Jackson chancery court in an action brought for that purpose under the provisions of Act 119 of the Acts of 1935; that on April 19, 1939, by proper deed of conveyance, the State Land Commissioner sold and conveyed said lots and lands to W. M. Duncan, who has continuously paid the taxes assessed against said lots and lands from year to year since he purchased same; that this suit was brought by the plaintiff on May 8, 1940, to cancel the deeds executed to the defendant by the state of Arkansas and to set aside the tax sale and the decree of that court confirming the title to said lots and

land on May 24, 1938. The court held that Act 119 above referred to was amended by Act 423 of 1941, and the court found that Act 423 was an act to provide for procedure and is therefore retroactive and that plaintiff cannot maintain her suit to cancel the deed on the ground set forth in her complaint. The court dismissed the complaint of the plaintiff as without equity.

Appellant prayed and was granted an appeal to the Supreme Court, and the case is now here on appeal.

The appellee, in the amendment to his answer, alleged that just prior to the time of purchasing the land and lots from the State Land Commissioner, the appellant and her husband, not being able to redeem said lands and being indebted to appellee in the sum of $445.62 for groceries and supplies sold and delivered to plaintiff and her husband by defendant, agreed that if defendant would purchase said lands in his own name from the state, they would in turn execute to him a quitclaim deed for their interest, in full satisfaction of their indebtedness to him. The amendment alleged that pursuant to this agreement J. W. Henneberger went with defendant to the state land office and on April 19, 1938, for the purpose of purchasing the said lands and lots, at which time defendant did purchase same.

There was no response to this amendment filed by appellant, and she did not plead the statute of frauds. She did object to the testimony of appellee when he testified to the conveyance of the land, because she stated it was an oral agreement to convey land, and evidently meant by that that it was within the statute of frauds.

However, the undisputed evidence shows that this was an oral agreement; that the appellee paid the taxes and obtained deeds from the State Land Commissioner; paid the judgments against said land and satisfied the indebtedness of appellant and her husband of $445.62.

There is some suggestion that this was a debt of the husband and that appellant was the owner of the land. The undisputed evidence says that "they," meaning Henneberger and his wife, owed a bill at appellee's store.

The appellant certainly owed the taxes which appellee paid, and she did not deny that appellee had performed the contract fully, satisfying their indebtedness and thereafter continuing to pay the taxes, which she never offered to pay.

This court has many times held that part performance under an oral contract for the sale of land takes it out of the statute of frauds. In this instance, however, there is not only part performance, but there was a full and complete performance by the appellee.

In the case of *Phillips* v. *Jones*, 79 Ark. 100, 95 S. W. 164, 9 Ann. Cas. 131, this court quoted with approval from Pomeroy: "It is, therefore, now settled, after some expressions of doubt, and with a few conflicting decisions, that possession by a tenant after the expiration of his former term, and payment by him of an increased rate of rent, are together a part performance of a verbal contract for a renewal of the lease."

Again, this court said in the case of *Robinson* v. *Wynne*, 97 Ark. 366, 134 S. W. 319: "We must assume, in the absence of a showing in the abstract, that the writing was sufficient to satisfy the statute of frauds. But, if that be not so, the statute is satisfied by the delivery of the timber to Coates and the agreement of Bell to pay the price, which was charged on the mortgage debt."

In the case of *Sullivan* v. *Winters*, 91 Ark. 149, 120 S. W. 843, we said: "If that part of the contract relating to the sale of the land be held to be within the statute of frauds, it has been fully performed, and the only unperformed portion is that relating to the division of the proceeds."

In the case of *Coffin* v. *McIntosh*, 9 Utah 315, 34 Pac. 247, the court stated: "At the trial counsel for the defendant moved to strike out the testimony of the plaintiff on the ground that it was shown thereby that the transaction was in relation to a piece of real estate, and, not being in writing, was within the statute of frauds. . . . This court, in *Knauss* v. *Cahoon*, 7 Utah 182, 26 P. 295, held, under the circumstances similar to those

in this case, that the statute of frauds had no application. Especially is this so where, as in this case, the statute is not pleaded."

The fact that appellee, pursuant to this contract, satisfied the debt they owed him and continued to pay the taxes on the property, takes the case out of the statute of frauds. And these facts are not denied by the appellant. The undisputed evidence shows them to be true.

We are therefore of opinion that the contract having been fully performed by the appellee, with the knowledge and consent of appellant, is binding on the parties and for this reason the case must be affirmed.

Both parties, however, argue at length the question whether the confirmation suit in the chancery court was binding on appellant and that Act 423 of the Acts of 1941 was retroactive, but since we have reached the conclusion we have on the other proposition, it becomes unnecessary to discuss or decide this question.

It follows from what we have said that the decree of the chancery court must be affirmed.